**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

TERRI BAKER

                Plaintiff,

-vs-                                              Case No. 5:09-cv-480-FtM-SPC

MICHAEL J. ASTRUE,
Commissioner of Social Security

                Defendant.
_____

**<u>ORDER</u>**

      This matter comes before the Court on the Plaintiff, Terri Lynn Baker's, Complaint Seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's Claim for Disability Insurance (Doc. # 1) filed on November 3, 2009, in the Middle District of Florida, Ocala Division. The Plaintiff filed her Memorandum of Law in Support of the Complaint (Doc. #14) on March 29, 2010. The Commissioner filed the Memorandum of Law in Support of the Commissioner's Decision (Doc. #15) on May 20, 2010. A Consent Form (Doc. #16) was signed by the parties indicating their agreement for jurisdiction in this matter to be exercised by the United States Magistrate Judge. The Parties' consent was approved by the District Court on May 28, 2010. (Doc. #17). The Motion is now ripe for review.

      The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

## FACTS

### *Procedural History*

The Plaintiff filed an applications for a period of Disability, Disability Insurance Benefits, and Supplemental Security Income on February 2, 2005, alleging a disability onset date of December 23, 2003. (Tr. 17).   The Plaintiff's claims were denied initially on December 30, 2005, and upon reconsideration on May 1, 2006. (Tr. 17).  The Plaintiff filed a timely written request for hearing on May 24, 2006.  (Tr. 17).  A hearing was held before the Honorable Douglas A. Walker, Administrative Law Judge (ALJ), in Ocala, Florida, on September 11, 2007.  (Tr. 17).  On December 7, 2007, the ALJ issued an unfavorable decision.  (Tr. 17).  The Plaintiff timely filed a Request for Review.  On June 9, 2008, the Appeals Council vacated the hearing decision and remanded the case in order to obtain additional evidence from a vocational expert. (Tr. 17).  On March 17, 2009, a supplemental hearing was held in Ocala, Florida, before the Honorable Douglas W. Abruzzo, ALJ. Donna P. Mancini, impartial vocational expert, appeared at the hearing.  (Tr. 17). The Plaintiff was represented by Mark N. Tipton, Esq., for each hearing.  On June 11, 2009, ALJ Abruzzo issued an unfavorable decision.  (Tr. 17-27).  The Plaintiff filed a Request for Review, which was denied by the Appeals Council. (Tr. 9).   The decision of the Commissioner then became final. Having exhausted all administrative remedies, the Plaintiff timely filed a Complaint with this Court.

### *Plaintiff's History*

The Plaintiff was born on October 21, 1974, she has at least a high school education and is able to communicate in English.  (Tr. 25).  She was 29 years old at the time of the hearing.  The Plaintiff's past relevant work history includes work as a sports instructor, secretary, cashier, retail manager, and recreation manager. (Tr. 25).  The Plaintiff alleges disability beginning on December

23, 2003, due to fibromyalgia, back pain, asthma, anemia, and carpal tunnel syndrome in her right wrist. (Tr. 80). The Plaintiff later added complaints of anxiety and depression. (Tr. 731-734).

*Medical and Psychological History*

In September 2000, Plaintiff had a work-related accident and later suffered a rear end motor vehicle accident in 2001. (Tr. 175). After the accident, the Plaintiff had full motor strength in her wrists, could walk with a normal reciprocal gait, and could toe and heel stand without difficulty (Tr. 171). Her doctors listed her work status as "no excessive turning of her neck." (Tr. 171). In May 2001, when Plaintiff was filing for worker's compensation, she stated she was not involved in an auto accident. (Tr. 160). Doctors performed an MRI which showed a "normal MRI of the thoracic spine" and "no disk herniation." (Tr. 159). Plaintiff walked with a normal reciprocal gait, and could toe and heel stand without difficulty. (Tr. 162). In July 2001, Dr. Jones noted Plaintiff's wrists were full strength, she could heel and toe walk bilaterally, and she had normal MRIs with slight scoliosis. (Tr. 183-85). Dr. Jones stated "It is my opinion [Plaintiff's] prognosis for recovery is excellent." (Tr. 185). Plaintiff had no physical limitations relating to the accidents and she could perform all activities of daily living. (Tr. 186). Dr. Jones recommended exercise and weaning Plaintiff off her medications. (Tr. 186-87).

In July 2003, after the alleged onset of total disability, Plaintiff went to a doctor with mild anemia; the doctor stated that he did "not feel there is any significant underlying hematologic disorder and full laboratory panel will be done." (Tr. 191). The test results were normal. (Tr. 188). In August 2004, Plaintiff complained of wrist pain. (Tr. 203). Her doctor stated "[s]he has been evaluated for her carpel tunnel syndrome which was negative." (Tr. 203). In October 2004, she denied side effects from medication, and "she denie[d] any problems this month, her only complaint

is that she has been tired. She admits to have been doing more." (Tr. 199). In November, her pain management specialist, Dr. Raymond Dominick, stated he "intend[ed] to lower her medications – I have concerns she may be over medicated." (Tr. 298).

In January 2005, Dr. Dominick sent Plaintiff for a psychiatric evaluation. (Tr. 464). Plaintiff stated "[m]y doctor wanted me to come. I don't know why." (Tr. 464). Plaintiff denied depression and her judgment and insight were fair. (Tr. 465). The evaluator assessed her global assessment of functioning (GAF) as 50. (Tr. 465).

In April 2005, doctors told Plaintiff she had high cholesterol and recommended she start exercising. (Tr. 207). Dr. Dominick reported Plaintiff was swimming for exercise, she had no joint pain or weakness, and she was sleeping six to eight hours a night. (Tr. 316-17). In June, Dr. Dominick reported Plaintiff's "pain is a little out of proportion to exam test." (Tr. 314). In December 2005, Dr. Dominick diagnosed Plaintiff with fibromyalgia. (Tr. 309). Dr. Dominick noted Plaintiff was sleeping six to eight hours a night; she was in no acute distress, and her motor strength was intact. (Tr. 307-08). Dr. Dominick stated Plaintiff "started crying when I explained that I do not support Social Security Disability Income for someone of her age." (Tr. 310).

In August 2006, Dr. Dominick reported Plaintiff was pregnant. (Tr. 455). He told Plaintiff to wean herself off of as many medications as possible, and also reported Plaintiff had no joint pain. (Tr. 455). In November, Plaintiff was doing better overall; she had some abdominal pain, was sleeping seven hours, and had no joint pain. (Tr. 451). Dr. Dominick reported that testing showed no abnormalities. (Tr. 493). Throughout her pregnancy, Dr. Dominick reported "[e]verthing is ok" and Plaintiff did not have joint pain, weakness, or numbness. (Tr. 445, 447, 448).

In July 2007, Dr. Dominick reported Plaintiff was "not depressed" and she had no joint pain, weakness, or numbness. (Tr. 485). She had been "ok" the past month. (Tr. 485). Her activities were "wrapped around taking care of her baby" and she was able to sleep seven hours a night. (Tr. 483). In June 2008, Plaintiff's systems were "reviewed and found to be negative" and she was not experiencing any notable side effects. (Tr. 582). In August, Plaintiff complained of some general pain, but had no joint pain and Dr. Dominick reported she came "to the office with her daughter, who is very active and she is able to keep up with the child." (Tr. 580).

In October 2008, Plaintiff went to a neurological consultant with wrist pain and decreased sensation. (Tr. 639-40). Her gait was "unremarkable," and she had a nerve conduction study, which was "essentially a normal study." (Tr. 640-641). Plaintiff underwent a consultative psychological exam. (Tr. 227). The examiner reported Plaintiff's thought processes were organized and her thought content was appropriate. (Tr. 228). She had fair insight and judgment, was capable of managing her financial interests (Tr. 228), and was friendly and polite (Tr. 227); the examiner did not opine whether Plaintiff had work-related limitations. After the exam, two psychological specialists reviewed Plaintiff's file and determined she did not have a severe mental impairment (Tr. 229, 335), and she only had mild limitations in activities of daily living, concentration, and social functioning. (Tr. 239, 345).

Plaintiff also underwent a physical consultative exam. (Tr. 250). The examiner reported Plaintiff had "no recollection of depression or ever being diagnosed with this." (Tr. 250). The examiner reported Plaintiff complained of fibromyalgia, but all tests were normal. (Tr. 251). Plaintiff complained of anemia, but did "not have any feeling of fatigue or other symptoms of the anemia." (Tr. 251). She said she had a history of carpal tunnel syndrome, "but was never formally

diagnosed." (Tr. 251). She stated she had asthma, but only used her inhaler twice a year stating "her asthma is not a problem." (Tr. 251). Plaintiff's gait was slow and normal, and she was able to walk heel to toe. (Tr. 253). After the exam, an agency expert reviewed the file, opining Plaintiff could only stand for one hour and was incapable of working an eight-hour day. (Tr. 258). Later, another agency expert reviewed the file and opined Plaintiff could stand or walk for six hours in an eight-hour day, walk for six hours, and lift ten pounds frequently. (Tr. 328).

### *Administrative Law Judge's Decision*

Upon consideration of the record, the Administrative Law Judge (ALJ) found that the Plaintiff meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through December 23, 2005. (Tr. 20). The ALJ found the Plaintiff has not engaged in substantial gainful activity since December 23, 2003. (Tr. 20). The ALJ concluded the Plaintiff has the following severe impairment: Fibromyalgia 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr. 20). It was determined the Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525, 404.1526, 416.925 and 416.926). (Tr. 21). After careful consideration of the entire record, the ALJ found the Plaintiff has the residual functional capacity to perform sedentary work as defined in the Social Security Regulations, except that she must avoid climbing ladders, ropes, or scaffolds; must avoid large, moving machinery, and unprotected heights; and is limited to simple routine tasks, not performed in a quota-based system. (Tr. 22). The ALJ found the Plaintiff was unable to perform any past relevant work. (Tr. 25). The Plaintiff is considered to be a younger individual age 18-44 at the alleged onset disability date, having a birth date of October 21, 1974.

(Tr. 25) Transferability of job skills is not material to the determination of disability because using the medical-vocational rules as a framework supports a finding that the Plaintiff is "not disabled" whether or not the Plaintiff has transferable job skills. (Tr. 26). The ALJ found that considering the Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. (Tr. 26). Therefore, the Plaintiff has not been under a disability, as defined in the Social Security Act, from December 23, 2003, through the date of this decision. 20 C.F. R. §§ 404.1520(g) and 416.920(g). (Tr. 26).

## THE STANDARD OF REVIEW

### A. Affirmance

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Commissioner, 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971); McRoberts v. Bowen, 841 F. 2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations.[1] 20 C.F.R. §§ 404.1520(a), 404.920(a). The

---

[1] The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:
   *Step 1.* Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.
   *Step 2.* Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.
   *Step 3.* Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the claimant is disabled. If not, the next question must be resolved.
   *Step 4.* Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.
   *Step 5.* Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant
(continued...)

Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, 2007 WL 4365647 at *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838–39 (11th Cir. 1982))); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F. 3d 1232, 1240 n.8 (11th Cir. 2004). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Phillips, 357 F. 3d at 1240 n.8; Dyer v. Barnhart, 395 F. 3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1439 (11th Cir. 1997).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the case. 42 U.S.C. § 405(g)(sentence four). The district court will reverse a

---

[1](...continued)
cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. Williams v. Commissioner, 407 F. Supp. 2d 1297, 1299-1300 (M.D. Fla. 2005) (citing Keeton v. Dep't of Health and Human Servs, 21 F.3d 1064, 1066 (11th Cir. 1994)); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).

## DISCUSSION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505, 404.1511.

The Plaintiff argues that the Commissioner erred as follows: (1) the ALJ erred at Step 2 by finding that the Plaintiff's chronic pain, depression, and anxiety were not severe impairments; (2) the ALJ failed to consider the Plaintiff's impairments in combination; (3) ALJ failed to comply with the Appeals Council's order; and (4) the ALJ's hypothetical question was incomplete. The Commissioner states that the decision of the Commissioner was supported by substantial evidence.

### *(1) Whether the Commissioner Erred at Step 2*

The ALJ must follow a five step inquiry in evaluation a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step two of the inquiry the ALJ determines if the Plaintiff has any impairment or combination of impairments which significantly limit the Plaintiff's physical or mental ability to do basic work activities. 20 C.F.R. § 1520(c). The Court reviews the ALJ's

decision to determine if the ALJ's omission of these impairments at step two is supported by the law and substantial evidence. Weigle v. Commissioner, 2010 WL 2927683 *3 (M.D. Fla. July 21, 2010). "Step two is a threshold inquiry.... Claimant need show only that her impairment is not so slight and its effect is not so minimal." Id. (citing McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir.1986)).

An impairment is severe only if it significantly limits a claimant's physical or mental ability to do basic work activities. Weigle, 2010 WL 2927683 at *3 (citing 20 C.F.R. § 404.1521(a)). The mere diagnosis of an impairment is insufficient to establish that it is severe, within the meaning of the regulations. Weigle, 2010 WL 2927683 at *3. "[T]he 'severity' of a medically determined disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." Weigle, 2010 WL 2927683 at *3 (citing McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir.1986)).

The Plaintiff argues that the ALJ erred by not finding her major depression, anxiety, right wrist pain, back pain, and anemia to be severe impairments. At Step 2 of the sequential evaluation the ALJ found that the Plaintiff had the severe impairment of fibromyalgia. (Tr. 20). In his decision, the ALJ found as follows:

> [t]he treatment record also reflects that she was diagnosed with possible carpal tunnel syndrome . . ., however the claimant acknowledges that this has never been formally diagnosed . . . . The claimant also reports that she was diagnosed with asthma as a child but acknowledged that she uses her inhaler about twice a year and that this is not a problem. The claimant further reports being diagnosed with anemia which evidenced in the treatment record however she reported that she does not feel fatigue or any other symptoms from this and she continually denied joint pain and weakness during treatment . . . . Therefore, the undersigned finds that these impairments do not cause more than a minimal effect on her ability to perform work related functions and are therefore non-severe.

(Tr. 20).

It is the Plaintiff's burden to produce medical evidence to support her claim that she has a severe impairment or combination of impairments. <u>Jones v. Apfel</u>, 190 F.3d 1224, 1228 (11th Cir. 1999). The Plaintiff failed to support her claim that her carpal tunnel syndrome was severe because she was not diagnosed with the impairment. The ALJ further noted that the Plaintiff's own testimony supported his findings. The Plaintiff informed the ALJ that her anemia did not make her feel fatigued. (Tr. 20). Regarding the Plaintiff's back pain allegations, the ALJ noted that she continually denied joint pain and weakness during treatment. (Tr. 20). As for the Plaintiff's asthma, she acknowledged that she uses her inhaler about twice a year and that this is not a problem. (Tr. 20).

The Plaintiff also argues that the ALJ ignored her complaints regarding her depression and anxiety. In his decision, the ALJ found as follows:

> [t]he evidence also reflects that the claimant has been diagnosed by her treating physician with depression and anxiety for which he prescribed Paxil .... However the claimant was evaluated in January 2005 at Lifestream at the request of her treating physician. At that time she denied being depressed and stated that she did not know why her doctor had sent her there. At that time the doctor noted that she did suffer from major depressive disorder, presenting with depressed mood and sad affect. The doctor did note specific symptoms or measures of her social functioning or concentration, persistence and pace, yet he assessed a Global Assessment of Functioning (GAF) score of only 50. Treatment notes from July 2007 specifically state that the claimant is not depressed. . . . The undersigned finds that this assessment is not consistent with the evidence or the doctor's own examination. The doctor prescribed a new medication, but the claimant stated that she would likely continue treatment with Paxil and her regular treating physician. . . . The undersigned finds that the evidence reflects only mild limitations in the broad areas of functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 C.F.R., Part 404, Subpart P, Appendix 1.

(Tr. 20-21). The ALJ based his conclusion on the fact that the medical evidence in the record did not support the examining doctor's diagnosis, and the opinion of the state agency physician who evaluated the issue at the reconsideration level and reached the same conclusion. (Tr. 21).

Thus, the ALJ support his determination at Step 2 that the Plaintiff's claims of major depression, anxiety, right wrist pain, back pain, anemia, and asthma were not severe impairments. The Court will not disturb a decision by the Commissioner if it is supported by substantial evidence. Lewis, 125 F. 3d at 1439 (holding that if the Commissioner's decision is supported by substantial evidence, it should not be disturbed).

### *(2) Whether the ALJ Considered Plaintiff's Impairments in Combination*

If a claimant has multiple impairments, none of which meets or equals a listed impairment, the medical evidence of record will be reviewed to determine if the combination of impairments is medically equal to any listed impairment. Blake v. Astrue, 2009 WL 3112101 * 9 (M.D. Fla. Sept. 28, 2009) (citing 20 C.F.R. § 404.1526(b)(3)). When determining whether the combination of impairments is sufficient to render a claimant disabled, the ALJ will consider the combined effects of all claimant's impairments without regard to whether any such impairment, considered alone, would be of sufficient severity. 20 C.F.R. § 404.1523. "An ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled." Blake, 2009 WL 3112101 at *9 (citing Davis v. Shalala, 985 F.2d 528, 534 (11th Cir.1993)). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having severe hypothetical and isolated illnesses. Blake, 2009 WL 3112101 at *9. Statements made by the ALJ that he or she has considered the impairments in combination indicates that the ALJ properly considered all of impairments in combination and complied with the Regulations. Blake, 2009 WL 3112101 at *9 (citing Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir.1986); *accord,* Jones v. Department of Health & Human Services., 941 F.2d 1529, 1533 (11th Cir.1991) (finding that a claimant does not have "an impairment or combination of impairments

listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4" indicates proper consideration of impairments in combination). In Jones v. Bowen, 810 F.2d 1001, 1006 (11th Cir.1986), after noting that the ALJ made an explicit finding that the record did not establish an impairment or combination of impairments that rendered the claimant disabled, the court observed, "the Secretary could have set forth more specific findings regarding the effect of the combination of impairments on Jones's ability to work; however, given the ALJ's exhaustive consideration of the effect of these impairments on Jones's residual functional capacity, we conclude that the Secretary's findings were sufficient."

The Plaintiff's argues that since the ALJ erred at Step 2, all of his subsequent rulings are in error, because he failed to consider her other impairments in combination with her claims of major depression, anxiety, right wrist pain, back pain, anemia, and asthma.

In this instance the ALJ found "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525, 404.1526, 416.925, and 416.926)." In addition, the ALJ supported his decision with a through discussion from the record as to why there was not a combination of impairments that would meet the listings. The Eleventh Circuit has determined an ALJ's statement that a claimant's severe impairment, or combination of impairments, do not meet the listings can be taken as evidence that the combined effects of all impairments was considered. Wilson v. Barnhart, 284 F.3d 1219, 1224-25 (11th Cir. 2002) ( citing Jones, 941 F.2d at 1533); Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986). Since all of the alleged impairments were discussed in the ALJ's decision, it is clear from the ALJ's analysis and wording that he was aware of all Plaintiff's impairments and considered them in combination as required under 42 U.S.C. §

423(d) (2)(B). Thus, the ALJ's decision should be affirmed in accord with the Regulations and the Eleventh Circuit's holdings in Wheeler and Jones.

### *(3) Whether the ALJ Failed to Comply with the Appeals Council's Order*

The Plaintiff argues the ALJ failed to comply with the Order of the Appeals Council in reviewing the evidence on reconsideration. The Commissioner states the ALJ properly used a vocational expert (VE) as directed by the Appeals Council.

The Appeals Council remanded the initial ALJ's decision to the Commissioner for further consideration. In its order, the Appeals Council directed the Commissioner as follows:

> Upon remand the Administrative Law Judge will:
>
> [o]btain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base . . . . The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy. . . .

(Tr. 374). The Plaintiff argues that the ALJ did not include all of her limitations in his hypothetical question and therefore, the ALJ did not follow the Appeals Council's directive. Specifically, the Plaintiff argues the ALJ left the Plaintiff's chronic pain for which she takes medication out of his hypothetical question. However, the ALJ noted in his decision as follows:

> [o]n October 16, 2008, the claimant underwent a neurological consultation conducted by Lance Y. Kim, D.O. The Claimant complained of constant deep excruciating pain in the right upper extremity despite surgery and medications as well as the upper left extremity. The claimant reported no obvious alleviating factors. At the supplemental hearing, the claimant testified that she has difficulty bending her wrists to a certain extent. She also testified that she drops objects because she cannot feel was [sic] she is holding. The claimant also testified that she can lift about a half-gallon of milk and stand for 10 minutes. However, neurological examination conducted by Dr. Kim was essentially normal. The claimant's muscle

> strength of the upper extremities was intact, except for tenderness to palpation throughout the right arm. The claimant's deep tendon reflexes were normal. There was diminished sensation to pin prick and cold temperature in the bilateral median territory. However, nerve conduction study report was essentially normal and did not reveal evidence of complex regional pain syndrome of the upper extremities.
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are quite exaggerated, poorly supported by objective medical evidence and therefore not entirely credible.

(Tr. 23-24). The ALJ also noted that the Plaintiff delivered a baby without significant pain and further found that her treatment notes reflected that she could care for the child. (Tr. 24). After a review of the medical evidence in the record, the ALJ found her claims of pain to be less than credible.

Since the ALJ determined that her pain was not supported by the medical evidence in the record, the ALJ did not need to include her pain claims in his hypothetical question. Ingram v. Commissioner of Social Security, 496 F.3d 1253, 1270 (11th Cir. 2007) (holding that the ALJ need only include the claimant's impairments as opposed to each and every symptom allegedly suffered by the claimant but are not supported by medical records or alleviated by medication); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) (holding the hypothetical question need only include the Plaintiff's functional limitations that are supported by the record).

The ALJ determined that the Plaintiff had the RFC to perform work at a sedentary level and the ALJ included those limitations in his hypothetical question. The ALJ asked the VE whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and RFC. (Tr. 26). The ALJ noted that the VE was asked a number hypothetical questions with

varying scenarios which the VE properly addressed in accord with the Appeals Council's directives. (Tr. 27). During the hearing, the VE also consulted the DOT using a laptop computer and carefully explained her professional opinions regarding the numerous questions addressing the issues of low stress as it applied to the erosion of the occupational base under the ALJ's review. (Tr. 27). Thus, the record before the Court establishes that the ALJ complied with the directions of the Appeals Council.

### *(4) Whether the ALJ's Hypothetical Question was Incomplete*

The Plaintiff argues that by erring at Step 2 the ALJ could not have included the Plaintiff's severe impairments in his hypothetical question. The Commissioner argues that the ALJ included the Plaintiff's severe impairments and was not required to include non-severe impairments that were not supported by the evidence in the record in the hypothetical question.

When using a VE, the ALJ must pose hypothetical questions to the VE to determine whether someone with the same limitations as the claimant will be able to secure employment in the national economy. Humphries v. Barnhart, 183 Fed. Appx. 887, 891 (11th Cir. 2006) (citing Phillips v. Barnhart, 357 F. 3d 1232, 1239 (11th Cir. 2004)). That hypothetical question must include "all of the claimant's impairments." Humphries, 183 Fed. Appx. at 891 (citing Wilson v Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002)); Jones v. Apfel, 190 F. 3d 1224, 1229 (11th Cir. 1999) *cert. denied*, 529 U.S., 120 S. Ct. 1723, 146 L. Ed. 2d 664 (2000). However, the ALJ need only include the claimant's impairments as opposed to each and every symptom allegedly suffered by the claimant but are not supported by medical records or alleviated by medication. Ingram, 496 F.3d at 1270. If the hypothetical question upon which the vocational expert bases his evaluation does not assume all of a claimant's impairments, the decision of the ALJ denying a claimant's applications for disability

insurance benefits, which is based significantly on the expert testimony, is not supported by substantial evidence. Loveless v. Massanarei, 136 F. Supp. 2d 1245, 1250 (M.D. Ala. 2001).

Referring back to the Court's Step 2 analysis, the ALJ did not find the Plaintiff's depression, anxiety, right wrist pain, back pain, and anemia to be severe impairments. *Supra* pp.10-11. Regarding the Plaintiff's alleged physical claims, the ALJ determined that the Plaintiff's claims were not supported by the medical evidence in the record. This Court has already determined that the decision by the ALJ was supported by substantial evidence in the record. The Court also affirmed the ALJ's determination that the evidence reflects only mild limitations in the broad areas of functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 C.F.R., Part 404, Subpart P, Appendix 1. As noted above, the ALJ need only include the claimant's impairments as opposed to each and every symptom allegedly suffered by the claimant but are not supported by medical records or alleviated by medication. Ingram, 496 F.3d at 1270. Since the ALJ found her mental limitations to be only mild, he was not required to include them in his hypothetical question.

Nevertheless, the ALJ did include some mild mental limitations in his hypothetical question. The ALJ's hypothetical stated that the hypothetical person was a thirty-three (33) old with a high school diploma whose residual functional capacity to "lift and carry" was limited to a maximum of ten pounds, that she could stand or walk for about two hours in an eight-hour workday, with pushing and pulling limited to ten pounds. (Tr. 717). The ALJ further limited the Plaintiff to no climbing ladders, ropes, scaffolds, and must avoid concentrated exposure to heights and hazardous machinery. The claimant was limited to low stress, simple routine work. (Tr. 717). The ALJ asked several other

hypothetical questions and afforded the Plaintiff's counsel the opportunity to also add conditions to those hypothetical circumstances.

A review of the ALJ's hypothetical questions demonstrates that the ALJ incorporated the Plaintiff's mild mental limitations into his hypothetical question by noting that the Plaintiff was limited to simple repetitive tasks in a low stress environment. The hypothetical question does not have to include every single diagnosed disorder, but merely has to include the limitation that may be the result of the specified disorder. Ingram, 496 F.3d at 1270. Thus, limiting the stress in the work environment as well as limiting the Plaintiff to simple repetitive tasks was sufficient to include any mild mental limitations the Plaintiff may have. As such, the Court finds that the ALJ's hypothetical included all of the Plaintiff's limitations in compliance with the Appeals Council's directives and Regulations.

## CONCLUSION

After a review of the record and the Parties respective memoranda of law, the Court concludes that the ALJ did not err at Step 2 by finding that the Plaintiff's chronic pain, depression and anxiety were not severe impairments. The ALJ did consider the Plaintiff's impairments in combination and he complied with the Appeals Council's order in reviewing the Plaintiff's claims. Finally, the ALJ's hypothetical question was complete and complied with the directives ordered by the Appeals Council on remand.

Accordingly it is hereby,

**ORDERED:**

The decision of the Commissioner is **AFFIRMED.**

**DONE AND ORDERED** at Fort Myers, Florida, this   11th   day of February, 2011.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record